IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERBERT LAMONT BALLARD,
          Defendant/Petitioner

                                    Civil Action No. 09-0237
                                    Criminal No. 06-42

          v.                            **ELECTRONICALLY FILED**

UNITED STATES OF AMERICA,
          Respondent

## MEMORANDUM OPINION DENYING MOTION TO VACATE (DOC. NO. 54)

**I.**       **Introduction**

Before the Court is Defendant Herbert Ballard's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 (doc. no. 54), the government's Motion to Dismiss Defendant's Habeas Corpus Petition (doc. no. 58), and Defendant's response to the motion to dismiss (doc. no. 64).

**II.**     **Procedural History**

According to the indictment in this case, from March 2003 until approximately September 2005, the Defendant conspired to commit (a) bank fraud in violation of 18 U.S.C. § 1344(1) and conspired in (b) making, uttering and possessing counterfeit securities of organizations involved in interstate commerce, violating 18 U.S.C. § 513(a).  An individual identified as "PK" supplied counterfeit checks to Defendant, who then recruited other individuals to pass the checks at grocery stores and other financial institutions located within the physical bounds of the Western District of Pennsylvania.  In addition to recruiting such individuals, Defendant also transported them to grocery stores to facilitate their passing of those counterfeit checks.

Defendant was indicted by a grand jury in February 2006 for one count of conspiracy in violation of 18 U.S.C. § 371.  The indictment lists numerous victims and the alleged loss to each, which aggregated in excess of $14,700.  On June 12, 2006, Defendant entered a guilty plea pursuant to a plea agreement, where he pled guilty to conspiracy to commit bank fraud and pass counterfeit securities.

### A.    Plea Agreement (Doc. No. 28)

According to the plea agreement, Defendant agreed to waive his right to direct appeal under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, except that he could appeal if either (a) the United States appealed the sentence or (b) the sentence either exceeded the statutory limit or unreasonably exceeded the sentencing guideline.  (Plea Agreement ¶ A(4).)  The Plea Agreement also states, "Herbert Lamont Ballard further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."  Additionally, the Plea Agreement sets forth the following:

> 3.    Because the offense of conviction was part of a conspiracy of criminal activity, restitution is not limited to the offense of conviction.  The Court may order that restitution be paid to any victim, person, or party directly harmed by Herbert Lamont Ballard's criminal conduct in the course of the conspiracy.

> 4.    The parties stipulate that, for the purposes of the Sentencing Guidelines, the loss amount is between $30,000 and $70,000. . . .

> 5.    The parties agree that under §2B1:1 of the Sentencing Guidelines, the base offense level is 6.  The parties further agree that the base offense level of 6 should be raised by 6 levels under §2B1:1(b)(1)(D) of chapter 2 of the Guidelines.

2

(Plea Agreement ¶¶ C(3)-(5).)  The parties agreed that the final offense level was thirteen, after raising it by four due to Defendant's aggravating role, and reducing it by three because of his acceptance of responsibility.  (Plea Agreement ¶¶ C(6)-(8).)

Defendant executed the plea agreement by signing the last page, and it was offered as an Exhibit in open court at the change of plea hearing.  Transcript, Change of Plea Hearing, (Doc. No. 48 at 11).

### B.    Guilty Plea Colloquy

At a change of plea hearing on June 9, 2006, this Court engaged in a thorough colloquy to ensure that Defendant knew and understood the consequences of his plea agreement and guilty plea.  Defendant was 41 years old at the time, and had a 12th grade education, and his actions and responses at the change of plea hearing indicated he had a thorough understanding of the indictment, the proceedings, and his rights.  Further, the colloquy demonstrates that defendant could read, write, and understand English, and that the Court, with defense counsel's agreement, found him competent.  Additionally, defendant acknowledged that: (a) he read, reviewed and understood the terms of the plea agreement with his attorney; (b) there were no other agreements or understandings with the government not set forth within the plea agreement; (c) there was no prediction or promise as to what his sentence would be or might be based upon what was said in the colloquy; and that (d) no one told him to lie or respond untruthfully to any of the questions. Transcript, Change of Plea Hearing, (Doc. No. 48 at 11, 13.)   Near the end of the colloquy, the Court asked counsel for the Government to summarize the terms of the plea agreement, and the government responded as follows:

He has agreed to plead guilty to the count of the indictment and pay mandatory restitution as well as the special assessment.

He has agreed to waive all his rights on direct appeal and to collaterally attack the conviction, except for under three circumstances:

One, if the United States were to take an appeal from the sentence, the Defendant may also take a direct appeal from the sentence.

Two, if the sentence were to exceed the statutory limit of five years as you have already set forth, he may also take a direct appeal from the sentence.

And, finally, if the sentence were to unreasonably exceed the sentencing guideline range calculated by Your Honor, he would also have the right to take a direct appeal.

He further waives his right to file a motion to vacate his sentence or attack his conviction under 28 USC, 2255.

The Government will recommend a three-point reduction for the acceptance of responsibility and the parties have agreed essentially to the offense level calculation.  I will just go over that briefly.  It is calculated pursuant to the sentencing guidelines.  We start off with a base offense level of six pursuant to 2B1.1 of the sentencing guidelines.

*We add six levels for the amount of loss, which the parties stipulate is between $30,000 and $70,000.*

We also add four levels for the role in the offense

After we reduce it three levels for acceptance of responsibility, the parties stipulate to an offense level of 13.

*Id.* at 17-18 (emphasis added).  Counsel for Defendant agreed this was an accurate summary of the plea agreement.  This Court then asked Defendant if "the summary [was] consistent with [his] understanding of the terms of the plea agreement," and Defendant answered in the affirmative.  (Doc. No. 48 at 18.)

This Court also specifically asked Defendant:

4

>       Do you understand in the plea agreement you are giving up your right to
> appeal except as specifically stated, and that you are also giving up any right you
> may have to file a motion to vacate sentence under Title 28 United States Code,
> Section 2255, for habeas corpus relief and you are giving up other valuable rights
> to obtain collateral review of your sentence?

*Id*. at 18-19.  Defendant answered "yes."  *Id*. at 19.

Defendant was sentenced to forty-one months of imprisonment (at the high end of the

advisory guideline range) on September 20, 2006, and thereafter appealed his conviction and

judgment of sentence to the United States Court of Appeals for the Third Circuit.

## C.      Direct Appeal

On direct appeal, the United States Court of Appeals for the Third Circuit first considered

the *Anders* brief filed by appellate counsel,[1] who identified four potential issues for appeal: (1)

whether the district court had jurisdiction; (2) whether the guilty plea was knowing and voluntary

and had a sufficient factual basis; (3) whether the sentence was reasonable; and (4) whether the

waiver of appellate rights was knowing and voluntary.  The Court of Appeals  found that none of

these issues had legal merit and, thus, affirmed Defendant's conviction and sentence.

First, the Court of Appeals determined that there was no basis for challenging the district

court's jurisdiction because Defendant pled guilty to a federal crime.  Second, the Court of

Appeals was satisfied from a review of the record that Defendant's guilty plea was knowing and

voluntary.  Third, the Court of Appeals found that the sentence imposed was reasonable, as both

parties accepted the calculations and facts averred in the presentence investigation report and the

sentence fell within the guidelines range.  Lastly, the Court of Appeals addressed Defendant's

---

[1] *Anders v. California*, 386 U.S. 738 (1967).  The Court of Appeals for the Third Circuit
appointed counsel to represent Defendant on direct appeal by Order dated May 3, 2007.

5

waiver of appellate rights.  Because the district court had thoroughly explained the waiver of appellate rights and the consequences of such waiver to Defendant before he accepted, the Court of Appeals found that waiver to be knowing and voluntary.

The Court of Appeals next considered Defendant's *pro se* brief, in which he argued that the district court wrongly sentenced him based on facts not alleged in the indictment.  Defendant pointed out that while he received a six-level increase based on a stipulated loss amount between $30,000 and $70,000, the indictment only charged him with causing $14,700.10 in loss, which corresponds to a four-level increase.  Defendant then made three separate arguments in support of his contention that he is entitled to a shorter sentence.

First, Defendant argued that the district court lacked jurisdiction to impose a sentence based on facts not alleged in the indictment.  Rejecting this argument, the Court of Appeals of appeals noted that a federal court's sentencing power is not defined by the scope of the indictment and that the type of discrepancy pointed out by Defendant only forms a basis for challenge when the facts omitted from the indictment enhance the statutory maximum sentence.  See *United States v. Cotton*, 535 U.S. 625, 631-32 (2002).

Defendant next argued that the district court erred in not independently verifying the facts he admitted at sentencing.  The Court of Appeals of appeals found that the district court was not required to perform any such analysis because the facts presented in the presentence report were not disputed.  *See* Fed. R. Crim. P. 32(i)(3)(B).  Defendant did not contest any facts alleged in the presentence report and the district court was permitted to accept any undisputed portion thereof as a finding of fact.  *See* Fed. R. Crim. P. 32(i)(3)(A).

Finally, Defendant argued that his trial counsel was ineffective for failing to dispute the

6

amount of loss alleged in the presentence report and that, therefore, he should be restored to the position he would have occupied if adequately represented. The Court of Appeals refused to consider this argument, stating: "We take no position on this issue, as such a claim is not properly presented at the direct appeal stage, at least where (as here) the record is insufficient to allow determination on the issue," Mandate and Opinion (Doc. No. 57-2), at 6-7, thus setting the stage for Defendant's motion to vacate.

### III.    Motion to Vacate

On February 24, 2009, Defendant sought collateral relief by filing with this Court a Motion to Vacate, Set Aside, or Correct His Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 54). Defendant argues that his Fifth and Sixth Amendment rights were violated because the amount of loss from the conspiracy used at sentencing ($30,000 to $70,000) varied from the amount set forth in the indictment ($14,700.10) and that trial counsel was ineffective for failing to object to this discrepancy at sentencing, as he now claims defense counsel promised Defendant he would do.[2]

The Government responded by filing a motion to dismiss Defendant's motion to vacate on the grounds that Defendant knowingly and voluntarily waived his right to file a motion under 28 U.S.C. § 2255, as set forth in the plea agreement and as determined by this Court in the colloquy, and affirmed by the Court of Appeals. The Government asserted that Defendant has not made allegations that his guilty plea was not knowing and voluntarily, or that holding to him

---

[2] The Court notes that trial counsel, a highly respected and experienced defense attorney, was privately retained. The standards for considering claims of ineffective assistance of counsel are no different for retained than for appointed counsel.

to his waiver of a section 2255 petition or other collateral relief would present a miscarriage of justice.

In his response to the Government's motion to dismiss, Defendant argued that this Court should examine his ineffective counsel claim using the two prong test according to *Hill v. Lockhart*: (1) whether counsel acted with the competence of the reasonable criminal attorney, and (2) whether there was a reasonable probability that he would not have pleaded guilty had he been counseled by a competent attorney.  474 U.S. 52, 56 (1985).  Defendant argues that the first prong was met when his counsel allowed the government to "amend" the grand jury indictment in the plea agreement by "raising" the amount of loss from $14,700 to $30,000 - $70,000. Defendant argues that he would not have pleaded guilty if he thought that the amount of loss damages would be so raised, and that he had been led to believe that counsel would challenge the higher amount at sentencing.

### IV.    Legal Analysis and Discussion

As noted above, Defendant, in his plea agreement, waived not only his right to file a direct appeal (which the Court of Appeals for the Third Circuit held was a valid waiver of his right to file a direct appeal), but also his right to file a motion under section 2255 or to commence any other collateral proceeding attacking his conviction or sentence.  The Court finds, after careful review of Defendant's motion to vacate, the government's motion to dismiss  and Defendant's response thereto, and the record of the proceedings,  that Defendant knowingly, voluntarily and intelligently waived his right to collaterally attack his conviction and judgment of sentence, that he understood the consequences of such waiver, and that his waiver presents an insurmountable procedural barrier to habeas corpus relief.

In a case of first impression, the Court of Appeals held that "[w]aivers of appeal, if entered knowingly and voluntarily, are valid, unless they work a miscarriage of justice." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).  The defendant there had waived his right to file an appeal in a plea agreement, and when asked by the district court if he understood that he would not be able to appeal his sentence, he replied: "Yes, I understand." *Id.* at 559-60.  On appeal, the Court of Appeals rejected the defendant's argument that waiver-of-appeals provisions are void as contrary to public policy, noting that ten other United States Courts of Appeals had found such provisions generally permissible and enforceable.  *Id.* at 560-61.  The Court of Appeals did recognize, however, that in some situations a waiver of appeal may be found invalid. *Id.* at 562.  One such situation is when a defendant claims that his plea agreement was the product of ineffective assistance of counsel.  *Id.* (citing *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999)).

In *United States v. Mabry*, 536 F.3d 231 (3d Cir. 2008), the Court of Appeals extended *Khattak's* reasoning, holding that because a defendant's waiver of his right to directly appeal or collaterally attack his sentence was knowing and voluntary, the waiver barred a claim of ineffective assistance of counsel arising from counsel's alleged failure to file a notice of appeal. The Court of Appeals pointed out that

> [While] a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it.

9

*Id.* at 237-38 (citing *Khattak*, 273 F.3d at 563).  Upon review of the record of proceedings,

particularly the plea agreement and change of plea colloquy, the Court of Appeals concluded that

the defendant's waiver was knowing and voluntary.  *Id.* at 238-39.

The Court of Appeals next determined whether enforcement of the defendant's waiver

would cause a miscarriage of justice.  *Id.* at 242-44.  The Court of Appeals affirmed the

"common sense approach" previously endorsed in *Khattak*, which directs a court to consider "the

clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the

impact of correcting the error on the government, and the extent to which the defendant

acquiesced in the result."  *Id.* at 242-43 (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir.

2001)).  Looking at the underlying facts of the case, the Court of Appeals found no allegations

that counsel was ineffective or coercive in negotiating the plea agreement and that enforcing the

waiver would not bar an appeal expressly preserved in that agreement.  *Id.* at 243.  Furthermore,

the defendant failed to identify in any of his filings a non-frivolous ground, not covered by his

waiver, for a direct appeal or collateral attack.  *Id.*  Thus, the Court of Appeals concluded that

enforcing the defendant's waiver was "in line with justice, not a miscarriage of it."  *Id.* at 244.

Following the reasoning of *Khattak* and *Mabry*, this Court, in *United States v. Clive*, 2008

WL 3889726 (W.D. Pa. Aug. 19, 2008), upheld a defendant's waiver of his right to collateral

attack and accordingly denied his section 2255 motion.  As in the instant case, the defendant's

plea agreement stated: "[Defendant] further waives the right to file a motion to vacate sentence,

under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other

collateral proceeding attacking his conviction or sentence."  *Id.* at *8; *see* Plea Agreement ¶ A(4).

Further, the defendant twice acknowledged during his change of plea hearing that he understood

his plea agreement and the waiver of collateral review contained therein.  *Clive*, 2008 WL

3889726, at *8.  Not only was this Court satisfied that Mr. Clive's waiver was knowing and

voluntary, it also found that enforcing the waiver would not result in a miscarriage of justice.  *Id.*

at *9-10.  The facts of the instant case lead the Court to now reach the same conclusion.

It is clear that Defendant's waiver of his right to file a motion under section 2255 was

knowing and voluntary.  As discussed above, Defendant answered "yes" when asked by this

Court if he understood his plea agreement, the waiver of habeas corpus relief contained therein,

and the sentence that could be imposed upon him.  Under *Khattak*, this Court must enforce the

waiver unless doing so would "work a miscarriage of justice."  273 F.3d at 563.

Defendant argues that his trial counsel was ineffective for failing to object to the amount

of loss stipulated to in the plea agreement, which caused him to suffer a six-level increase in his

base offense level, as opposed to a four-level increase that would be based upon the lower loss

amount contained in the indictment.  Although it was recognized in *United States v. Shedrick* that

"[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the

defendant] from understanding his plea or from filing a direct appeal as permitted by his plea

agreement would result in a miscarriage of justice," 493 F.3d 292, 298 (3d Cir. 2007), there is

neither "deficient lawyering" nor confusion as to the plea agreement in the instant case.

To succeed on an ineffective assistance of counsel claim, Defendant would have to prove

(1) that his counsel's performance was deficient and (2) that he was prejudiced by it.  *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984).  Because Defendant's arguments do not overcome the

"strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance," *id.* at 689, he fails the first prong of the Strickland test.  Furthermore, Defendant has failed to demonstrate how he was prejudiced by counsel's alleged error.

Defendant does not allege that he misunderstood the terms of his plea agreement, and at no point during his change of plea hearing did he object to those terms or to his counsel's performance.  To the contrary, the Court pointedly asked Defendant if there had been any other deals or promises not reflected in the plea agreement, and if anyone had instructed him not to answer truthfully to any questions, and he answered in the negative.  His sworn testimony contradicts his current assertion that defense counsel "advised Movant that they would attack that figure at sentencing," i.e., the figure of $30,000.00 - $70,000.00 stated in the Plea Agreement as the total amount of loss.  Motion to Vacate at 2.

Moreover, at the Sentencing Hearing on September 20, 2006, the following inquiry was made:

> THE COURT: Are you satisfied with the service and representation provided by your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is there anything that he has done that you think he should not have done?
>
> THE DEFENDANT: No.
>
> THE COURT: Is there anything you wanted him to do that he didn't do?
>
> THE DEFENDANT: No.

Transcript, Sentencing Hearing (Doc. No. 49), at 13.

Thus, Defendant's claim of ineffective assistance of counsel for failure to attack the amount of loss at sentencing is directly contradicted by his testimony and the record of the proceedings, is without merit and provides no ground for invalidating Defendant's waiver of his right to collaterally attack his sentence.

Under the "common sense approach" endorsed in *Khattak* and later affirmed in *Mabry*, this Court finds that enforcing Defendant's waiver has not resulted in a miscarriage of justice. See *United States v. McKoy*, 2009 WL 3601208, *3 (3d Cir. November 3, 2009) (even though district court did not specifically determine if defendant understood the full breadth of the waiver of his right to collaterally attack his sentence, the Court of Appeals, conducting plain error review, held that defendant had not demonstrated that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding waiver in the plea agreement).[3]

This Court also rejects Mr. Ballard's other argument that his Fifth and Sixth Amendment rights were violated because the amount of loss attributed to the conspiracy considered by the Probation Office and this Court for sentencing ($30,000 to $70,000) varied from the amount set

---

[3] The Court of Appeals for the Third Circuit found that the following record facts demonstrated Defendant's understanding of the waiver of rights, and that he could not show that any deficiency in the colloquy affected his substantial rights: "Here, the record demonstrates that McKoy was a 23-year-old with a tenth grade education; that he could read, write, and understand English; that the Court, with defense counsel's agreement, found him competent; that the prosecutor discussed the terms of the appellate waiver during the change-of-plea hearing; that McKoy stated to the Court that he understood that he was giving up his right to appeal, to file a motion to vacate sentence, and to seek collateral review of his sentence; and that McKoy had executed the acknowledgment on the final page of his plea agreement and reviewed the agreement with his counsel and understood the terms and contents." *McKoy*, 2009 WL 3601208, *3.

forth in the indictment ($14,700.10).  This higher amount of loss did not vary the indictment - it was simply relevant conduct under the sentencing guidelines.  U.S.S.G. 1B1.3.  Moreover, the Court deems this argument foreclosed by the Court of Appeals for the Third Circuit which rejected a very similar (if not identical) argument on direct appeal, wherein defendant contended in his *pro se* brief that this Court "wrongly sentenced him based on facts not alleged in the indictment."  Opinion and Mandate (Doc. No. 57-2), at 5-6.

### V.    Conclusion

For all of the foregoing reasons, the Court finds that defendant's waiver of his right to file a section 2255 petition or seek other collateral relief was voluntarily and intelligently waived, with full understanding of the consequences of the waiver, that defendant cannot show ineffective assistance of counsel in his performance at the change of plea or sentencing proceedings, and that no manifest injustice will occur by enforcing the waiver.  Accordingly, defendant's motion to vacate will be denied, by separate Order of Court.


s/Arthur J. Schwab                                
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties

Herbert Lamont Ballard, Pro Se
Renewal Resident mail
P.O. Box 295
Pittsburgh, PA 15230